IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SHARI THOMPSON and BILLY THOMPSON, | ) ) ) | CASE NO. 8:05CV136 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| ADAM KYLE, P. CLARK, W. IHM, M. NOONAN, C. REIGAN, J. SMITH, DOES II through X, in their individual and official capacities, UNKNOWN DOE I, Police Chief in his individual and official capacity, and JAMES JANSEN, County Attorney, in his individual and official capacity, DOES XI through XX, Deputy and Assistant County Attorneys in their individual and official capacities, CITY OF OMAHA, a municipal corporation, DOUGLAS COUNTY NEBRASKA, a political subdivision, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) | |

This matter is before the Court on a Motion to Dismiss under Fed. R. Civ. Pro. 12(b)(6) filed by Defendants Adam Kyle, P. Clark, M. Noonan, and the City of Omaha, for failure to state a claim upon which relief can be granted. (Filing No. 16). The issues have been fully briefed.

The Complaint alleges the Defendants violated Plaintiffs Shari and Billy Thompson's Fourth, Fifth, Sixth, Thirteenth, and Fourteenth Amendment rights when the Defendants damaged the interior of Shari Thompson's place of business while executing a search warrant of the business; disassembled a vehicle and left it in plain view in the business parking lot; arrested Billy Thompson without a warrant or exigent circumstances; damaged the interior and exterior of the Shari and Billy Thompson's residence while executing a search warrant; and conspired to seek felony drug and weapon charges against Billy

Thompson for three years. (Filing No. 1, hereafter "Complaint" ¶¶ 1,9,10,12,13,15). The Complaint alleges that because Shari Thompson is a black American citizen, the Defendants conducted the search of her business differently from the way the Defendants search businesses owned by white owners. (Complaint ¶ 11). The Complaint further alleges that the Defendants were acting under the color of state law and pursuant to the official policy of their respective political subdivisions at all relevant times. (*Id.* ¶ 7).

This matter is before the Court pursuant to 28 U.S.C. § 1331, which grants original jurisdiction to federal district courts over federal questions; 28 U.S.C. § 1343, which grants original jurisdiction to federal district courts over various civil rights actions; and 28 U.S.C. § 1367(a), which grants supplemental jurisdiction to district courts over claims that are so related to the original jurisdiction claims that they form part of the same case or controversy.

### *Standard*

In considering a motion to dismiss a complaint under Rule 12(b)(6), the court must assume all the facts alleged in the complaint are true, and must liberally construe the complaint in the light most favorable to the plaintiff. *Young v. City of St.* Charles, 244 F.3d 623, 627 (8th Cir. 2001); *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Young,* 244 F.3d at 627. Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that

show on the face of the complaint that there is some insuperable bar to relief. *Schmedding*, 187 F.3d at 864.

### *Background*

Plaintiffs Shari and Billy Thompson are black American citizens and residents of Nebraska. (Complaint ¶ 2). The Complaint named as Defendants: the City of Omaha; Omaha law enforcement officers, Adam Kyle, P. Clark, W. Ihm, M. Noonan, C. Reigan, J. Smith, and Does II through X, in their individual and official capacities; the Omaha Chief of Police; Douglas County; County Attorney J. Jansen; and Does XI through XX, Deputy County Attorneys or Assistant County Attorneys (collectively "Defendants"). (*Id.* ¶¶ 3,4,5,5a,6). The following Defendants were dismissed from the action on August 10, 2005: James Jansen; Does XI through XX; and Douglas County, Nebraska. (Filing No. 25).

The Complaint asserts that at all times, Defendants were acting under the color of state law and pursuant to the official policy of their respective political subdivision agencies; were acting as agents on behalf of all other Defendants; and were acting within the course and scope of their respective political subdivision agencies. (*Id.* ¶¶ 7,8).

The Complaint alleges that in March 2001, the Defendants obtained a search warrant to search Shari Thompson's place of business in Omaha, Nebraska. (*Id.* ¶ 9). During the execution of the warrant, the Complaint claims the officers disassembled or destroyed a vehicle in the parking lot of Shari Thompson's business and left it in plain view of customers. (*Id.* ¶ 10). The Complaint alleges the Defendants also disassembled and destroyed the interior of Shari Thompson's business during the search. (*Id.*). The Complaint further asserts that the Defendants do not destroy or disassemble vehicles or

the interior of businesses owned by white owners when conducting searches for illegal substances. (*Id.* ¶ 11). The Complaint alleges the Defendants disassembled the vehicle and damaged the business to discourage people from doing business with Shari Thompson because she is a black American. (*Id.* ¶ 19). As a result, Shari Thompson claims she incurred expenses to repair the damages to her business and suffered a decrease in her customer base, which ultimately forced her to close her business in December 2001. (*Id.* ¶ 20). Shari Thompson claims she lost earnings and lost the money she invested in the business. (*Id.* ¶¶ 21,22). Additionally, Shari Thompson claims she suffered personal injury and mental and emotional distress as a result of the Defendants' actions and as a result of the loss of her business. (*Id.* ¶ 23).

The Complaint also states that the Defendants damaged the interior and exterior of Shari and Billy Thompson's residence while executing a search warrant for the residence. (*Id.* ¶ 13). Shari and Billy Thompson claim they suffered personal injury, mental and emotional distress, and humiliation after approximately twenty police vehicles surrounded their residence during the search of the residence. (*Id.* ¶ 30).

The Complaint asserts that the Defendants arrested Billy Thompson in a residential neighborhood in Papillion, Nebraska, without a warrant or exigent circumstances in March 2001. (*Id.* ¶ 12). The Complaint alleges that although the Defendants found no illegal substances or weapons during the searches, the Defendants charged Billy Thompson with drug and weapon related felonies. (*Id.* ¶ 15). Billy Thompson claims the Defendants deprived him of his Fourth, Fifth, and Fourteenth Amendment rights by illegally and unreasonably searching the business and residence, filing a criminal complaint against

4

him, and continuing judicial jurisdiction over him for three years without probable cause. (*Id.* ¶¶ 32,33).  The Complaint further alleges the Defendants conspired to: conduct the allegedly unlawful searches; arrest Billy Thompson; assert he committed a felony for three years; and destroy Shari Thompson's business.  (*Id.* ¶ 41).

The Complaint claims the Defendants are also liable for state tort claims, which are before the Court pursuant to 42 U.S.C. § 1367.  The state tort claims include: destruction of personal property; interference with business opportunity; assault; and unlawful detainer, and these causes of action are related to the incidents described above.  (*Id.* ¶¶ 43-50).

Defendants Kyle, Clark, Noonan, and the City of Omaha filed a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief can be granted.  (Filing No. 16).  Defendants claim Shari and Billy Thompson's claims are time barred and the alleged violations of 42 U.S.C. §§ 1981, 1982, 1985, and 1986 fail to state claims upon which relief can be granted. (*Id.*).

### *Discussion*

#### *Statute of Limitations*

The Defendants assert that Shari and Billy Thompson's claims arising under 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986 are barred by the relevant statutes of limitations. (Filing No. 17 at 1-5).  The Thompsons filed the Complaint on March 28, 2005. (Filing No. 1).  While the Complaint fails to specify particular dates, the Complaint alleges the relevant conduct occurred in March 2001. (Complaint ¶¶ 9,12).

Sections 1981, 1982, 1983, and 1985 have no specifically stated limitations period. To remedy this void, the United States Supreme Court has stated, "When Congress has

5

not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266-67 (1985). However, in 1990, Congress enacted 28 U.S.C. § 1658, which assigned a four year statute of limitations to any "civil action arising under an Act of Congress" enacted after December 1, 1990. 28 U.S.C. § 1658.

**1.   42 U.S.C. § 1981**

In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), the United States Supreme Court was faced with the question of whether the four year statute of limitations created by 28 U.S.C. § 1658 applied to a § 1981 claim. Congress amended § 1981 in 1991 by defining the phrase "make and enforce contracts." *Jones*, 541 U.S. at 372-73.[1] The Court determined that § 1658 governs any claims made possible by any post-1990 enactment. *Id.* at 382. Therefore, in *Jones,* the Court determined that § 1658 applied to a plaintiff's claims of a hostile work environment, wrongful termination, and

---

[1]Section § 1981 reads:

§ 1981. Equal rights under the law

(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

6

failure-to-transfer because these claims were made possible by the 1991 amendment to § 1981. *Id.* at 383.

Relying on the reasoning of *Jones,* if Shari and Billy Thompson's § 1981 claims arose from the language of the pre-1991 version of § 1981, the statute of limitations would be determined by Nebraska law. Section 25-219 of the Revised Statutes of Nebraska is the appropriate statute of limitations for a claim arising under the original § 1981. *See Clayborne v. Omaha Public Power Dist.*, 211 F.R.D. 573, 589 (D. Neb. 2002); *see also Metcalf v. Omaha Steel Castings Co.,* 476 F.Supp. 870, 873 (D.Neb.1979). Section 25-219 establishes a three year statute of limitations for claims created by federal statutes when the federal statute fails to provide a statute of limitations. Neb. Rev. Stat. § 25-219 (Reissue 1995).[2] Under § 25-219, Shari and Billy Thompson's § 1981 claims would be time barred because the Complaint was filed more than three years after the alleged misconduct.

On the other hand, if Shari and Billy Thompson's claims arose from the amended version of § 1981, the four year statute of limitations created by § 1658 would be controlling. *See Jones*, 541 U.S. at 383. The amended version of § 1981(b) states the phrase "'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." The Complaint alleges the Defendants' actions ultimately

---

[2]Section 25-219 states:

All actions upon a liability created by a federal statute, other than a forfeiture or penalty, for which actions no period of limitations is provided in such statute shall be commenced within three years next after the cause of action shall have accrued.

Neb. Rev. Stat. § 25-219 (Reissue 1995).

7

forced Shari Thompson to close her business due to a loss of customers, which resulted in a financial inability to operate the business. (Complaint ¶ 20). Upon liberal reading and after construing the Complaint in the light most favorable to the Plaintiffs, the Court determines the Complaint alleges facts that could possibly entitle the Thompsons to relief under the amended version of § 1981; therefore, the applicable statute of limitations is four years. *Jones*, 541 U.S. at 383.

Although the Complaint failed to specify the particular dates of the alleged misconduct, the Complaint alleges the relevant searches and arrest occurred in March 2001. The Complaint was filed on March 28, 2005, which means that it is possible that the Complaint was timely filed if the alleged misconduct occurred after March 28, 2001 but before April 1, 2001. For this reason, the Court grants Shari and Billy Thompson leave to amend the Complaint in order to specify the particular date(s) of the alleged misconduct.[3] Construing the Complaint liberally and in the light most favorable to Shari and Billy Thompson, the Court finds it is inappropriate at this time to dismiss the § 1981 claims based on the statute of limitations; however, any claims that accrued prior to March 28, 2001, are time-barred.

**2.    42 U.S.C. §§ 1982, 1983, and 1985**

The claims under 42 U.S.C. §§ 1982, 1983, and 1985 should not be dismissed based on the statute of limitations. Various federal courts have determined that state personal injury statutes establish the statute of limitations for §§ 1982, 1983, and 1985 claims. *See e.g. Sulik v. Taney County, Mo.,* 393 F.3d 765, 766-67 (8th Cir. 2005)

---

[3]Any causes of action under 42 U.S.C. § 1981 which accrued prior to March 28, 2001, are untimely.

(determining that § 1983 claims are best characterized as personal injury actions); *see also Sternjohn v. Kreisler,* 238 F. Supp. 2d 1104, 1112 (D. Minn. 2003) (stating that § 1982 claims were characterized as personal injury actions for purposes of statute of limitations); *see also McDougal v. County of Imperial,* 942 F.2d 668, 673 (9th Cir. 1991) (stating that § 1985 claims are best characterized as personal injury actions). The statute of limitations for personal injury actions in Nebraska is four years. Neb. Rev. Stat. § 25-207 (Reissue 1995). As stated above, it is possible that the Complaint was timely filed if the alleged misconduct occurred after March 28, 2001 but before April 1, 2001.[4] Construing the Complaint liberally and in the light most favorable to Shari and Billy Thompson, the Court finds that at this time, the §§ 1982, 1983, and 1985 should not be dismissed based on the statute of limitations.

### 3. 42 U.S.C. § 1986

By the express terms of the statute, any claim under 42 U.S.C. § 1986 must be brought within one year after the cause of action accrued. The statute states: "But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986. In their Brief in Opposition to Motion to Dismiss, Shari and Billy Thompson agree that any claims under § 1986 are time-barred, and should be dismissed. (Filing No. 27 at 2). Therefore, the Court dismisses any and all § 1986 claims as untimely.

---

[4] The Court grants leave to amend the Complaint in order to specify the particular date(s) of the alleged misconduct. Any causes of action pursuant to 42 U.S.C. § 1982, 1983, or 1985 that accrued prior to March 28, 2001, are untimely.

9

**4.     Pendent State Tort Claims**

Shari and Billy Thompson assert the state tort claims of: destruction of personal property; interference with business opportunity; assault; and unlawful detainer. (Complaint ¶¶ 43-50). Section 13-902 of the Revised Statutes of Nebraska states: "[N]o suit shall be maintained against [a] political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the Political Subdivisions Tort Claims Act." Neb. Rev. Stat. § 13-902 (Reissue 1997). Section 13-920(1) of the Revised Statutes of Nebraska states:

> No suit shall be commenced against any employee of a political subdivision for money on account of damage to or loss of property or personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment occurring after May 13, 1987, unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued in accordance with section 13-905.

Neb. Rev. Stat. § 13-920(1) (Reissue 1997).[5] Section 13-920(3) further states "any suit commenced on any claim filed pursuant to this section shall be forever barred unless begun within *two years* after the claim accrued." Neb. Rev. Stat. § 13-920(3) (Reissue 1997) (emphasis added).

The Complaint alleges that at all times, the Defendants were acting under the color of state law and pursuant to the official policy of their respective political subdivision agencies; were acting as agents on behalf of all other Defendants; and were acting within the course and scope of their respective political subdivision agencies. (*Id.* ¶¶ 7,8) The

---

[5]Plaintiffs' reliance on *Dieter v. Hand,* 333 N.W.2d 772 (Neb. 1983), is misguided. At the time *Dieter* was decided, Nebraska had a different version of the Political Subdivisions Tort Claims Act in place. The Act was amended in 1987 in response to the *Dieter* decision. *See Jessen v. Malhotra,* 112 F.Supp.2d 917 (D. Neb. 2000).

Complaint names the Defendants in their individual and official capacities; however, the requirements of the Political Subdivisions Tort Claims Act still apply when an individual is sued in his or her individual capacity, but is acting within the scope of employment.  *See Bohl v. Buffalo County*, 557 N.W.2d 668 (Neb. 1997); *see also Cole v. Wilson,* 627 N.W.2d 140 (Neb. Ct. App. 2001).  Because the Complaint alleges the Defendants were at all times acting within the course and scope of their employment, the Political Subdivisions Tort Claims Act applies.

The Complaint alleges the misconduct occurred in March 2001, which is at least four years prior to the filing of the Complaint on March 28, 2005.  (Complaint ¶¶ 9,12).  The state tort claims in the Complaint include: destruction of personal property; interference with business opportunity; assault; and unlawful detainer.  (Complaint ¶¶ 43-50).  With the possible exception of interference with business opportunity, the state tort claims accrued in March 2001.  The Complaint alleges that Shari Thompson had to close her business in December 2001, which would mean the interference with business opportunity claim accrued no later than December 2001.

Because the state tort claims alleged in the Complaint accrued more than two years before March 28, 2005, the state tort claims are untimely.  Furthermore, the Political Subdivisions Tort Claims Act does not apply to "[a]ny claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  Neb Rev. Stat. § 13-910(7) (Reissue 1997).  The Court dismisses Shari and Billy Thompson's state tort claims as untimely.

11

*Failure to State a Claim*

**1.       42 U.S.C. § 1981 and 1983**

Defendants argue that Shari and Billy Thompson's 42 U.S.C. § 1981 claims should be dismissed because 42 U.S.C. § 1983 provides the exclusive remedy when a claim for § 1981 violations is against a state actor. (Filing No. 17). In *Monell v. Department of Social Services of City of New York*, the United States Supreme Court concluded:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

436 U.S. 658, 694 (1978) (emphasis added). In *Jett v. Dallas Independent School District*, the United States Supreme Court applied this "policy or custom" requirement to claims under 42 U.S.C. § 1981, stating:

> We hold that the express "action at law" provided by § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor. Thus to prevail on his claim for damages against the school district, petitioner must show that the violation of his "right to make contracts" protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases.

491 U.S. 701, 735-36 (1989).

The Eighth Circuit determined in *Lockridge v. Board of Trustees of University of Arkansas*, 315 F.3d 1005, 1007 (8th Cir. 2003), that a claim alleging a violation of § 1981 may not be brought directly against a state actor, but must be brought under § 1983. However, in *Lockridge*, the Court liberally construed the plaintiff's complaint "as including claims for violations of . . . § 1981 brought under § 1983" because the complaint alleged

§§ 1981 and 1983 violations. *Lockridge*, 315 F.3d at 1007.[6] Similarly, the Court liberally construes Shari and Billy Thompson's Complaint as alleging violations of § 1981 under § 1983.

The Eighth Circuit has held that a custom for *Monell* purposes exists when there is "a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." *Jane Doe A. v. Special School District*, 901 F.2d 642, 646 (8th Cir.1990). To prove the existence of a custom, a plaintiff must prove:

1. The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2. Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3. That plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Jane Doe A.*, 901 F.2d at 646.

For purposes of this case, Shari and Billy Thompson may not assert violations of rights protected by § 1981 against state actors, unless Shari and Billy Thompson's rights were violated in accordance with custom or policy as defined in *Monell* and *Jane Doe A*. The Complaint alleges the Defendants were at all times acting pursuant to the official

---

[6]42 U.S.C. § 1981 was amended in 1991, following the decision in *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735-36 (1989). Congress added subsection (c), which states: "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." Although various federal courts have interpreted this amendment as superseding *Jett*, the Eighth Circuit continues to follow *Jett. See Lockridge v. Board of Trustees of University of Arkansas,* 315 F.3d 1005 (8th Cir. 2003); *Artis v. Francis Howell North Band Booster Ass'n, Inc.,* 161 F.3d 1178 (8th Cir. 1998); *Bankhead v. Arkansas Dept. of Human Services,* 264 F.Supp.2d 805 (E.D. Ark. 2003), *rev'd on other grounds*, 360 F.3d 839 (8th Cir. 2004).

policy of their respective subdivision agencies. (Complaint ¶ 7). The Complaint further alleges that the City of Omaha has received complaints from black American citizens regarding the manner in which officers conduct searches in the black community, and that the City condones this conduct. (*Id.* ¶ 11a,12a,13a). After liberally construing the Complaint in the light most favorable to Shari and Billy Thompson, the Court finds the Complaint sufficiently alleges that the Defendants acted pursuant to custom or policy.

"A plaintiff establishes a prima facie case under § 1981 by showing: (1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts)." *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004) (citing *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir.2004)). The Complaint alleges that Shari Thompson is a black American citizen, and that the Defendants conduct searches of businesses owned by black citizens differently from the searches of businesses owned by white citizens. (Complaint ¶¶ 2,11). The Complaint asserts the Defendants' actions forced Shari Thompson to close her business due to a loss of customers and a financial inability to operate the business. (*Id.* ¶ 20). After liberally construing the Complaint, the Court finds the § 1981 claims brought under § 1983 against the City of Omaha should not be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

The Complaint named Defendants Adam Kyle, P. Clark, and M. Noonan in their official and individual capacities. (Filing No. 1). The Defendants may be sued in their official capacities under § 1983 for violations of § 1981, so long as the Defendants acted pursuant to custom or policy. *Monell*, 436 U.S. at 690. For the reasons stated above, the

Complaint alleges sufficient facts to avoid a 12(b)(6) dismissal for the § 1981 claims brought under § 1983 against the Defendants in their official capacities.

On the other hand, the Complaint fails to allege any facts which would make the Defendants liable in their individual capacities. The Complaint specifically states the Defendants at all times were acting under the color of state law; pursuant to the official policy of their respective political subdivisions; and within the course and scope of their respective political subdivision agencies. (Complaint ¶¶ 7,8). The claims against the Defendants in their individual capacities are therefore dismissed for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. Pro 12(b)(6).

**2.    42 U.S.C. § 1982**

The Defendants claim the Complaint fails to state a claim upon which relief may be granted under 42 U.S.C. § 1982, because the Complaint fails to specifically allege loss of property. (Filing No. 17). "The prima facie elements of a § 1982 case parallel those of a § 1981 case and require that a plaintiff show: (1) membership in a protected class; (2) discriminatory intent on the part of the defendant and (3) interference with the rights or benefits connected with the ownership of property." *Daniels v. Dillard's, Inc.,* 373 F.3d 885 (8th Cir. 2004).

The Complaint alleges that Shari Thompson is a black American citizen, and that the Defendants conduct searches of businesses owned by black American citizens differently from the searches of businesses owned by white citizens. (Complaint ¶¶ 2,11). The Complaint claims the Defendants damaged and or destroyed interior and exterior structures of Shari Thompson's business and the Thompsons' residence. (*Id.* ¶¶ 10,13). The Complaint asserts the Defendants' actions forced Shari Thompson to close her

business due to a loss of customers and a financial inability to operate the business. (*Id.* ¶ 20). After liberally construing the Complaint, the Court finds the Complaint alleges sufficient facts to avoid dismissal pursuant to Fed. R. Civ. Pro. 12(b)(6) for the § 1982 claims.

**3.      42 U.S.C. § 1985**

The Defendants claim the Complaint fails to state a claim upon which relief may be granted under 42 U.S.C. § 1985.  (Filing No. 17).  The Defendants argue that the Complaint  fails to allege a conspiracy sufficiently, and that the City of Omaha cannot conspire with itself or with its employees. (*Id.*). In order to show a civil rights conspiracy under 42 U.S.C. § 1985(3), a plaintiff must prove:  (1) the defendants did conspire; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws; (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy; and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States. *Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir.1996).

In *Cross v. General Motors Corp.,* 721 F.2d 1152, 1156 (8th Cir. 1983), the Eighth Circuit stated a corporation and its agents constitute a single entity in the eyes of the law, and a corporation cannot conspire with itself.  The Eighth Circuit has extended this "intra-corporate conspiracy doctrine" to governmental entities*. See Runs After v. United States*, 766 F.2d 347, 354 (8th Cir.1985); *Richmond v. Board of Regents*, 957 F.2d 595, 598 (8th Cir.1992).  An exception to the intra-corporate conspiracy doctrine exists when a complaint

16

names individual defendants and alleges those defendants acted outside of the scope of their employment. *Cross,* 721 F.2d at 1156.

The remaining Defendants in the case include: the City of Omaha; Omaha law enforcement officers, Adam Kyle, P. Clark, W. Ihm, M. Noonan, C. Reigan, J. Smith, and Does II through X, in their individual and official capacities; and the Omaha Chief of Police. (Complaint ¶¶ 3,4,5,5a,6); Filing No. 25). The Complaint alleges that at all times, the Defendants were acting under the color of state law and pursuant to the official policy of their respective political subdivision agencies; were acting as agents on behalf of all other Defendants; and were acting within the course and scope of their respective political subdivision agencies. (*Id.* ¶¶ 7,8). For these reasons, the Defendants collectively constitute a governmental entity subject to the intra-corporate conspiracy doctrine. The exception to the doctrine does not apply to the case at bar because even though the Complaint names the Defendants in their individual and official capacities, the Complaint alleges that at all times, the Defendants were acting within the course and scope of their employment. (*Id.* ¶ 8). The Court finds the Complaint fails to state a claim under § 1985 for which relief may be granted.

For the reasons stated in this memorandum,

IT IS ORDERED:

1) Defendants' 12(b)(6) Motion to Dismiss (Filing No. 16) is granted in part and denied in part, as follows:

 (a) Defendants' Motion to Dismiss with respect to claims arising under 42 U.S.C. § 1986 is granted;

(b) Defendants' Motion to Dismiss with respect to the claims of: destruction of personal property; interference with business opportunity; assault; and unlawful detainer (Filing No. 1, ¶¶ 43-50) is granted;

(c) Defendants' Motion to Dismiss with respect to claims arising under 42 U.S.C. § 1985 is granted;

(d) Defendants' Motion to Dismiss with respect to claims against the Defendants in their individual capacities is granted;

2) Defendants' Motion to Dismiss is denied in all other respects; and

3) The Court grants the Plaintiffs ten days from the date of this order to amend the Complaint to specify the particular date(s) of the Defendants' alleged misconduct. In the absence of an amended Complaint, the Court will infer that the alleged misconduct occurred before March 28, 2001, and the Defendants may renew their motion to dismiss on the basis that the Complaint was not filed within the applicable statute of limitations.

DATED this 29th day of August, 2005.

> BY THE COURT
>
> s/Laurie Smith Camp
> United States District Judge

18